IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUZ LEANDRO MARTINEZ LEIVA,<br><br>Plaintiff,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>Defendants. | Case No. 23-cv-02027-CRB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION TO DISMISS** |

Petitioner Cruz Leandro Martinez Leiva ("Martinez Leiva"), a 23-year-old artist, has been in immigration detention for 20 months pursuant to 8 U.S.C. § 1126(c), without ever having had an individualized determination of whether he poses a risk of flight or a danger. He brings this petition for habeas corpus, asking the Court to release him outright or order an evidentiary hearing at which the government must demonstrate that further detention is warranted. See Petition (dkt. 1); Traverse (dkt. 14). The government opposes the petition and seeks dismissal of the case. See MTD/Return (dkt. 13). Because the Court is persuaded that the government has violated Martinez Leiva's constitutional right to procedural due process, it GRANTS the petition and DENIES the motion to dismiss.

## I.     BACKGROUND

### A.     Fleeing El Salvador and Early Struggles in the United States

Martinez Leiva was born in El Salvador in 2000. CLML Decl. (dkt. 1-1) ¶ 2. His father was a soldier in the Salvadoran Armed Forces and was tasked with arresting gang members, including members of MS-13. Id. ¶ 5. One day after school, members of MS-13 confronted Martinez Leiva; they told him that they knew that he was the son of a military soldier, asked where his father was, and threatened to hurt and kill his family if

they stayed in MS-13's territory.  Id. ¶ 6.  Martinez Leiva stopped going to school because he was afraid.  Id.  A week later, his father was attacked by members of MS-13, and only got away because other soldiers intervened.  Id.  His family fled El Salvador the next week.  Id.  They arrived at the Mexico-United States border on October 16, 2015.  Id. ¶¶ 2–3.

United States Customs and Border Protection immediately apprehended Martinez Leiva and issued a Notice to Appear, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States who has not been admitted or paroled.  McKee Decl. (dkt. 1-3) ¶ 4.  Shortly thereafter, the family settled in Houston, Texas, where Martinez Leiva enrolled in high school.  CLML Decl. ¶¶ 2, 8.  Martinez Leiva, who had been a strong student in El Salvador, struggled in high school because he did not speak English.  Yolanda Decl. (dkt. 1-2) ¶ 5; CLML Decl. ¶ 8 ("It was difficult for me to feel good about myself in school.  I knew I could do well in school, but I got discouraged not speaking any English, which was sad for me because I had loved school back in El Salvador.").  Martinez Leiva's father then abandoned the family after three months in the United States.  Yolanda Decl. ¶ 4.  Martinez Leiva "lost [his] way."  CLML Decl. ¶¶ 7, 8 ("I felt so abandoned and lost"); Yolanda Decl. ¶¶ 4–6.

**B.    Criminal Conviction**

In January 2017, when Martinez Leiva was 16, he and a group of friends were approached after school by two former students, Brian and Christian, who were over the age of 18.  CLML Decl. ¶ 10.  Brian invited them to go on an adventure with him to Los Angeles.  Id.  Martinez Leiva did not know where Los Angeles was in relation to Houston or how long a drive it would be.  Id.  After a few days in Los Angeles, the brakes stopped working on Brian's car, and Martinez Leiva and his friends became anxious about how they would get home.  Id. ¶ 11.  Brian and Christian told them that that would need to rob people to get money for the car repair—that no one would get hurt, and that this would be the fastest way to get home.  Id. ¶ 12.  Brian and Christian also told them that minors could not be convicted of crimes in the United States, so that if they got caught, Martinez Leiva

2

and his friends should tell the police that they were minors and then the police would let them go.  Id.

On January 31, 2017, they (primarily Brian and Christian) carjacked a woman in a residential area, and then crashed the car on the side of the road.  Id. ¶ 13.  Martinez Leiva was arrested the next day.  Id.  In reliance on Brian and Christian's advice, he waived his right to remain silent, waived his right to an attorney, and claimed responsibility for the crimes.  Id. ¶ 14.  He was placed in pretrial detention in a juvenile facility but charged as an adult in Los Angeles Superior Court.  Id. ¶¶ 14–15.  He pled no contest to California Penal Code § 215(a) for carjacking and § 211 for robbery in the second degree.  Id. ¶ 15.  He was sentenced to five years at Soledad State Prison.  Id.

### C.  State Sentence

While in state prison, Martinez Leiva took responsibility for his life.  Id. ¶ 18.  He became fluent in English, completed high school and made progress toward a college degree at Palo Verde Community College, and held down a job, working as a painter five days a week.  Id. ¶ 19.  Martinez Leiva completed at least eleven continuing education courses, was never written up for any fights or riots, and got credit for good behavior, reducing his sentence by 11.5 months.  Id. ¶ 20.  He worked through his trauma around his father's leaving the family, committed himself to his faith, and recommitted himself to his lifelong passion for art—drawing and painting portraits, and picking up new textile skills.  Id.  Martinez Leiva also maintained a loving relationship with his family, speaking with his mother nearly every day, and speaking multiple times a week with his sister, brother, and 7-year-old son.  Id. ¶¶ 24–25.  He hoped to return to live with his family in Houston, work as an industrial painter, and enroll in college upon his release.  Id. ¶¶ 28–30.

### D.  Immigration Detention and Proceedings

An immigration court hearing took place on July 31, 2017; Martinez Leiva did not appear because he was in state custody, and so he was ordered removed in absentia.  McKee Decl. ¶ 5.  At the completion of his state criminal sentence, on September 2, 2021, DHS detained Martinez Leiva pursuant to 8 U.S.C. § 1226(c); he is housed at Golden State

United States District Court
Northern District of California

3

Annex, an immigration detention center run for profit by GEO Group, Inc. that was previously used as a correctional facility.  CLML ¶ 3, Petition at 8–9 n.2.

### 1.    Detention at Golden State Annex

Martinez Leiva's time at Golden State Annex has been very difficult:

> The conditions at Golden State Annex are unlivable and unsanitary.  There are often flies in our food, the milk we are served is often spoiled, the walls of our bathrooms are covered in mold and the plumbing is broken, with leaking toilets that leak blackwater all over the floors.  We often have outbreaks of illness from eating contaminated food and Golden State Annex has been under investigation for having inadequate medical care and abhorrent conditions for some time now.

CLML ¶ 27.[1]  Martinez Leiva participated in a hunger strike with 81 other detainees as a form of peaceful protest against their perceived mistreatment at Golden State Annex.  Id. He believes that he was retaliated against for that hunger strike.  Id.

Martinez Leiva participated in a class action lawsuit against ICE and GEO, alleging retaliation in violation of the First-Amendment-protected right to engage in a peaceful collective hunger strike.  See Mendez v. ICS, No. 3:23-cv-829-TLT, Dkt. 1 (N.D. Cal. Feb. 23, 2023).  He also filed a civil rights complaint with the DHS Office for Civil Rights and Civil Liberties about the violence, retaliation, and medical neglect at Golden State Annex. McKee Decl. ¶ 31, Ex. A.

### 2.    Immigration Proceedings

While Martinez Leiva has been detained at Golden State Annex, he has participated in immigration proceedings to avoid removal.  On September 23, 2021, the immigration judge ("IJ") granted DHS's motion to reopen and rescind the in absentia removal order. McKee Decl. ¶ 7.  The IJ changed the venue of Martinez Leiva's removal proceedings from Houston, Texas, to Van Nuys, California, the immigration court that hears removal proceedings for individuals at Golden State Annex.  Id.

---

[1] The Petition lists other evidence of inadequate conditions at Golden State Annex, including a January 2022 inspection by the DHS Office of Detention Oversight that concluded that Golden State Annex "was in compliance with only 14 of 24 required standards," and a June 2022 labor strike to protest hazardous working conditions and negligible wages, which led to a Cal/OSHA investigation at Golden State Annex that found six violations of state labor law.  Petition at 9–10.

United States District Court
Northern District of California

A number of hearings took place over the next few months:

- On October 5, 2021, Martinez Leiva appeared in immigration court pro se and was granted a continuance to seek representation. Id. ¶ 8.

- On October 21, 2021 and November 16, 2021, the IJ granted Martinez Leiva continuances because he was making efforts to find counsel. Id. ¶ 9.

- On December 7, 2021, Martinez Leiva appeared at his Master Calendar hearing with attorney Xavier Chavez, and was granted a one-week continuance to request the documents DHS had filed in support of Martinez Leiva's removal. Id. ¶ 10. Chavez received those documents at the December 14, 2021 Master calendar hearing. Id.

- On January 7, 2022, Martinez Leiva, through counsel, filed an I-589 Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture, and documents in support thereof. Id. ¶ 11.

- On January 13, 2022, an individual hearing was set for March 22, 2022. Id. ¶ 12.

- On March 22, 2022, the IJ heard Martinez Leiva's testimony. Id. ¶ 13. Martinez Leiva testified about the gang threats his family had received in connection with his father's job. Id. The IJ found the testimony credible but found that the death threats did not constitute past torture or demonstrate a sufficient likelihood of future torture. Id. ¶ 14. The IJ denied relief and ordered Martinez Leiva's removal to El Salvador. Id.

Martinez Leiva timely filed a pro se appeal of that decision to the BIA. Id. ¶ 15. He had trouble finding new counsel while in detention and got a single 21-day extension for his briefing. Id. ¶ 16. He then proceeded pro se on appeal. Id. ¶ 18.

On August 17, 2022, the BIA adopted and affirmed the IJ's decision. Id. ¶ 19. Martinez Leiva filed a timely petition for review of the BIA's decision, as well as a motion for stay of removal, motion to proceed in forma pauperis, and motion for appointment of counsel, to the Ninth Circuit. Id. ¶ 20; Martinez-Leiva v. Garland, No. 22-1495, Dkt. 1

United States District Court
Northern District of California

(9th Cir. Sept. 8, 2022).  On November 28, 2022, the Ninth Circuit determined that "appointment of pro bono counsel would benefit the court's review in this petition" and granted the motion for appointment of counsel.  Martinez-Leiva v. Garland, No. 22-1495, Dkt. 12 (9th Cir. Nov. 28, 2022).[2]  The Circuit appointed the Cornell Law School Asylum and Convention Against Torture Appellate Clinic to represent Martinez Leiva.  Martinez-Leiva v. Garland, No. 22-1495, Dkt. 13 (9th Cir. Jan. 3, 2023).  The briefing schedule for the petition for review will conclude on July 4, 2023.  Id.  Martinez Leiva then expects the Circuit to take at least four months to issue a decision, see McKee Decl. ¶ 25.

On February 14, 2023, Martinez Leiva filed an administrative request to ICE seeking his release from custody as a matter of prosecutorial discretion, submitting evidence of his community ties, rehabilitation, educational support, community support, and photographs of his art.  McKee Decl. ¶ 30.  ICE denied the request without mention of the evidence, based on his mandatory detention.  Id.

Martinez Leiva has been in immigration detention for 20 months.

## II.      LEGAL STANDARD

Federal district courts may grant writs of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  It shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  Id. § 2243.

In immigration cases, federal district courts lack jurisdiction to review "decision[s]" for which the statute grants "discretion" to the Attorney General.  8 U.S.C. § 1252(a)(2)(B).  Federal district courts do have jurisdiction over "constitutional claims or questions of law."  Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011).

---

[2] The Petition notes that "[O]nly meritorious or otherwise deserving cases are selected for the program" and that appointed counsel "have achieved at least partial reversal or other favorable termination for their client in about 50% of cases since the program began."  Petition at 52 (quoting United States Court of Appeals for the Ninth Circuit, Pro Bono Program (2019) at 2, available at https://bit.ly/3Hb5WBP).

## III.   DISCUSSION

Martinez Leiva's habeas petition implicates three main issues: (A) whether this Court has jurisdiction over the petition; (B) whether Martinez Leiva's continued detention violates Martinez Leiva's right to substantive due process; and (C) whether Martinez Leiva's continued detention violates Martinez Leiva's right to procedural due process.[3] This order addresses those issues in turn, concluding that procedural due process requires an individualized bond hearing.

### A.   Jurisdiction

The first issue the Court must resolve is one of jurisdiction.  The government argues first that this Court lacks jurisdiction over Martinez Leiva's petition because habeas jurisdiction only lies in the district of confinement—in this case, the Eastern District.  See MTD/Return at 6 (citing Rumsfeld v. Padilla, 542 U.S. 426 (2004)).  The government has made this same argument repeatedly and has seen it repeatedly rejected.  See, e.g., Pham v. Becerra, No. 23-cv-01288-CRB, 2023 WL 2744397, at *2–4 (N.D. Cal. Mar. 31, 2023) (collecting cases).  The Court rejects it here, too.

While Padilla stands for the "default rule . . . that the proper respondent is the warden of the facility where the prisoner is being held," 542 U.S. at 435, this Court has explained that "Padilla did not address the question, raised in this case, of which court has jurisdiction when the detainee is confined 'in a facility run by an entity other than the federal government,'" Pham, 2023 WL 2744397, at *3.  Martinez Leiva, like the petitioner in Pham, is detained at Golden State Annex, a private detention facility in the Eastern District.  See CLML Decl. ¶ 3l; Pham, 2023 WL 2744397, at *3.  The Court sees no reason to reach a different result in this case than it did in Pham, and again follows "Judge Chhabria's sensible rule articulated in Saravia v. Sessions, that 'a petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility,' 280 F. Supp. 3d at 1185."

---

[3] There is no question that Martinez Leiva has due process rights.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

1   Pham, 2023 WL 2744397, at *4.  Because Martinez Leiva has sued Field Office Director

2   Moises Becerra, who is based in this district, the Court has jurisdiction to hear the petition.

3   See also Hernandez Gomez v. Becerra, No. 34-cv-01330-WHO, 2023 WL 2802230, at *2

4   (N.D. Cal. April 4, 2023) (reaching same conclusion).[4]

5       **B.    Substantive Due Process**

6           The second issue the Court must resolve is whether the government's continued

7   detention of Martinez Leiva violates his constitutional right to substantive due process.

8   Substantive due process prohibits civil detention that is punitive in its purpose or effect,

9   including detention that is unreasonably prolonged.  See Martinez Franco v. Jennings, 456

10  F. Supp. 3d 1193, 1197 (N.D. Cal. 2020) (citing Jonas v. Blanas, 393 F.3d 918, 932 (9th

11  Cir. 2004), Bell v. Wolfish, 441 U.S. 520, 536 (1979)); see also Jackson v. Indiana, 406

12  U.S. 715, 738 (1972) (as to pretrial commitment of incompetent criminal defendants, "due

13  process requires that the nature and duration of commitment bear some reasonable relation

14  to the purpose for which the individual is committed"); United States v. Salerno, 481 U.S.

15  739, 747 n.4 (1987) (as to pretrial detention, there is a "point at which detention in a

16  particular case might become excessively prolonged, and therefore punitive").  Martinez

17  Leiva argues that his detention has become unconstitutionally punitive, as: (1) it does not

18  serve any nonpunitive governmental interest because he is not a flight risk or danger to his

19  community; (2) it is excessive in relation to any governmental interest; and (3) its duration[5]

20  exceeds the bounds of due process.  See Petition at 18–23.  The government does not

21  squarely address this claim as applied to Martinez Leiva, instead relying on general

22  language from Demore v. Kim, 538 U.S. 510, 527–28 (2003), that "detention during

23  deportation proceedings is a constitutionally valid aspect of the deportation process" and

24

25  [4] The Court further rejects the government's argument, see MTD/Return at 4–5, 15–16, that
    Becerra is a sham defendant whose presence does not support venue.  See Pham, 2023 WL
26  2744397, at *4 ("Both AAFOD Gonzalez and DFOD Cruz report to FOD Becerra; thus, Becerra,
    and not Gonzalez or Cruz, exercises control over [Martinez Leiva's] physical custody.").
27  [5] To be clear, the issue here is prolonged detention, not indefinite detention.  See Jennings v.
    Rodriguez, 138 S. Ct. 830, 842 (2018) ("detention under § 1226(c) has 'a definite termination
28  point': the conclusion of removal proceedings.") (quoting Demore v. Kim, 538 U.S. 510, 529
    (2003)).

that detaining "deportable criminal aliens pending their removal proceedings [per 8 U.S.C. § 1226(c)] . . . . necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." See MTD/Return at 16–17; but see Traverse at 5–7 (asserting that the government did not address the substantive due process issue at all and so conceded it).

Demore is an appropriate starting point. Martinez Leiva's detention pursuant to 8 U.S.C. § 1226(c) did not start out being punitive because it serves the valid government purpose of preventing him from fleeing or causing harm during his removal proceedings. Demore, 538 U.S. at 527–28; see also Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (civil detention in immigration proceedings is "nonpunitive in purpose and effect"). Martinez Leiva's argument that his detention has become punitive because he does not pose a risk of flight or a danger—pointing to his family ties, the real possibility that he will succeed in his petition for review, and his rehabilitation, see Petition at 19–23—might be correct. But that is what bond hearings are for.

The same is true of Martinez Leiva's argument that continued detention is excessive in relation to the government's interest, given alternatives like ICE's Intensive Supervision Appearance Program. See id. at 20–21. It is correct only if he is correct that he poses no risk (or a manageable risk) of flight or danger, something that he has not yet had the opportunity to prove. See Crespo v. Baker, No. 11-cv-3019-IEG, 2012 WL 1132961, at *5–6 (S.D. Cal. Apr. 3, 2012) ("Petitioner may be able to prove . . . that he is not a threat to the community and the United States, but he has not done so yet."). This is not a case, like the COVID-19 cases that Martinez Leiva cites, where a court can readily determine that the conditions of confinement have become excessive in relation to an individual's risk of flight or danger. See Petition at 23 (citing Bent v. Barr, 445 F. Supp. 3d 408, 414–15, 421 (N.D. Cal. 2020); Doe v. Barr, No. 20-cv-02151-LB, 2020 WL 1820667, at *8–11 (N.D. Cal. April 12, 2020)); see also Pimentel-Estrada v. Barr, 458 F. Supp. 3d 1226 (W.D. Wash. April 28, 2020) ("Although Petitioner's initial detention could not be

described as punitive, the situation has drastically changed given the unique and unprecedented threat posed by COVID-19. . . . due to his age and underlying health conditions. These conditions create far more serious consequences for Petitioner than are justified by Respondent's need to ensure his presence at removal").[6] The conditions Martinez Leiva describes at Golden State Annex are certainly problematic, <u>see</u> Petition at 8–11, but they are largely problematic for all detainees there in the same way. The particularized point Martinez Leiva makes—that <u>his</u> time exposed to the conditions at Golden State Annex is excessive in light of less harsh alternatives that would provide adequate supervision for <u>him</u>—is one that he has not yet had the opportunity to demonstrate.

Nor will the Court conclude that that the duration of Martinez Leiva's detention, in and of itself, exceeds the bounds of substantive due process. <u>See</u> Petition at 21–23. Martinez Leiva cites to no cases so holding in this context.[7] He relies on <u>United States v. Torres</u>, 995 F.3d 695, 709–10 (9th Cir. 2021), in which a criminal defendant was detained for 21 months while awaiting trial because the court was closed due to the pandemic. <u>Id.</u> at 21–22. The Circuit recognized as "undisputed" that "at some point, pretrial detention can 'become excessively prolonged, and therefore punitive.'" 995 F.3d at 708. But it analyzed the question using, among other factors, the evidence supporting detention under the Bail Reform Act (not relevant here), <u>id.</u>, and it actually concluded that the defendant's 21-month detention did <u>not</u> violate due process, though 21 months was "approaching the limits of what due process can tolerate," <u>id.</u> at 709.

Here, the issue is best framed <u>not</u> as whether 20 months in immigration detention is

_____

[6] The Court notes that all three of these cases were decided at the beginning of the COVID-19 pandemic, and that the courts came to decide these issues in the context of motions for compassionate release with great frequency. <u>See Stirling v. Salazar</u>, No. 3:20-cv-00712-SB, 2022 WL 16948810, at *7–10 (D. Or. Nov. 15, 2022) (recounting history of how individuals in federal custody sought COVID-related release).
[7] Cases that do address the issue seem to dispose of it rather quickly. <u>See, e.g.</u>, <u>Singh v. Barr</u>, 400 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019) (rejecting argument that length of immigration detention had "become so prolonged that it is no longer reasonably-related to its purpose of securing him in preparation of removal" "because the purpose of his detention is still reasonably related to the government's purpose of effectuating his removal.").

United States District Court
Northern District of California

excessive, full stop, but whether it is excessive for Martinez Leiva given the absence of an individualized bond hearing.  See Casas-Castrillon v. Dept. of Homeland Sec., 535 F.3d 942, 950 (9th Cir. 2008) ("Even where detention is permissible, however, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'") (quoting Zadvydas, 533 U.S. at 690), overruled on other grounds by Jennings v. Rodriguez, 138 S. Ct. 830, 846 (2018).  Indeed, the overwhelming number of cases the Court has reviewed that allege prolonged detention under 8 U.S.C. § 1226(c) assert that the prolonged detention violated the detainee's procedural due process in the absence of a bond hearing.  See also Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c). . . . According to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point— violate the right to due process.'") (quoting Martinez v. Clark, No. 18-cv-01669-RAJ, 2019 WL 5962685, at *1 (W.D. Wash. Nov. 13, 2019)).

Accordingly, the Court turns to Martinez Leiva's procedural due process claim.

## C.    Procedural Due Process

The third and final issue the Court must resolve is whether the government's continued detention of Martinez Leiva without a bond hearing violates his constitutional right to procedural due process.  Detention violates due process absent "adequate procedural protections" or "special justification[s]" sufficient to outweigh the "'constitutionally protected interest in avoiding physical restraint.'"  Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).  Section 1226(c), titled "Detention of Criminal Aliens," instructs that the government "shall take into custody any alien" who has committed various types of criminal offenses "when the alien is released." The Supreme Court and Ninth Circuit have addressed the meaning, application, and constitutionality of section 1226(c) piecemeal.  See Salesh P. v. Kaiser, No. 22-cv-3018-

DMR, 2022 WL 17082375, at \*6 (N.D. Cal. Nov. 18, 2022) ("The Supreme Court and the Ninth Circuit have long 'grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'") (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1114 (9th Cir. 2010)).  The Court in Demore held that section 1226(c) was constitutional on its face.  538 U.S. at 530.  The Court in Jennings v. Rodriguez, 138 S. Ct. 830, 847 (2018), held that the statutory text of section 1226(c) does not provide for the imposition of periodic bond hearings during detention pending a removal decision.  However, Jennings left open the question of whether prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. Salesh P., 2022 WL 17082375, at \*7 (citing Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018)); see also Rodriguez, 909 F.3d at 256 ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"). Courts in this district have concluded that "a petitioner being held under § 1226(c) may make an as-applied due process argument to support a request for a bond hearing." Hernandez Gomez, 2023 WL 2802230, at \*5.

There is "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 122(c) becomes unconstitutional." Gonzalez v. Bonnar, 18-cv-5321-JSC, 2019 WL 330906, at \*3 (N.D. Cal. Jan. 25, 2019).  This Court declines Martinez Leiva's invitation to adopt a bright-line rule at six months of detention. See Petition at 24–25 (noting that one court in this district has done so); see also Hernandez Gomez, 2023 WL 2802230, at \*3 (rejecting six month rule); Salesh P., 2022 WL 17082375, at \*7 (rejecting six month rule).[8]  Rather, the Court will apply the three factors from Mathews v. Eldridge, 424 U.S. 319, 335 (1976), to determine what the "specific dictates of due process" require in this particular case: "First, the private interest

---

[8] Nor will the Court follow German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 210–11 (3d Cir. 2020), an out-of-circuit authority.  But see Petition at 29–31 (proposing German Santos as an available alternative to a bright-line six-month rule or Mathews).

1  that will be affected by the official action; second, the risk of an erroneous deprivation of

2  such interest through the procedures used, and the probable value, if any, of additional or

3  substitute procedural safeguards; and finally, the Government's interest, including the

4  function involved and the fiscal and administrative burdens that the additional or substitute

5  procedural requirements would entail."

6            **1.**      **Private Interest**

7        The "main private interest at stake" in this case is Martinez Leiva's interest in

8  "[f]reedom from imprisonment—from government custody, detention, or other forms of

9  physical restraint." Perera v. Jennings, No. 21-CV-4136-BLF, 2021 WL 2400891, at *4

10  (N.D. Cal. June 11, 2021) (quoting Zadvydas, 533 U.S. at 690). The interest in "freedom

11  from prolonged detention" is "unquestionably substantial." See Singh, 638 F.3d at 1208.

12  And it persists no matter the length of detention. See id. (quoting Rajnish v. Jennings, No.

13  3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)). Nor is this

14  interest extinguished because Martinez Leiva is detained under section 1226(c). See

15  Pham, 2023 WL 2744397, at *5–6. Indeed, Martinez Leiva's interest is heightened in light

16  of the significant length of time (20 months)[9] he has been detained, see Zadvydas, 533

17  U.S. at 690, 696, and in light of his strong desire to rejoin his family and to meet his young

18  son, see Petition at 27.

19        The government asserts that the Court should take into account the process that

20  Martinez Leiva has already received, making much of his "custody reviews."

21  MTD/Return at 2, 3, 23–24. Some portions of the government's brief actually refer to

22  Martinez Leiva as having had a "bond hearing." Id. at 2 ("he has already been afforded a

23  bond hearing before a neutral decisionmaker"), 23–24 ("Petitioner requested and was

24  granted a bond hearing"). But the documents to which the government cites in support of

25  that assertion are Martinez Leiva's "motion for bond determination," the DHS submission,

26  and the IJ's form order, which checks off "Denied, because 236(c)-mandatory detention."

27

28  [9] Martinez Leiva notes that he has been in detention "nearly 13 times the length of the 'brief' detention approved by the Court in Demore, 538 U.S. at 530." Petition at 26.

United States District Court
Northern District of California

Id. (citing to Munoz Decl. (dkt. 13-1), Exs. L (dkt. 13-13), M (dkt. 13-14), N (dkt. 13-15)). These documents do not reflect a substantive bond hearing at which a neutral decisionmaker made an individualized assessment of Martinez Leiva's dangerousness or risk of flight. See id. at 25 ("What is clear from the record is that the IJ found Petitioner subject to mandatory detention under 8 U.S.C. § 1226(c)."). Rather, they were instances in which an IJ concluded that Martinez Leiva was statutorily ineligible for bond. Traverse at 11 (citing Munoz Decl. Ex. N). Martinez Leiva has never had a bond hearing at which a neutral decision maker determined whether he is a risk of flight or a danger. Id. at 1, 11. He has not had the process that is available to non-citizens detained under section 1226(a). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022) (noting the "extensive procedural protections [for section 1226(a) detainees] that are unavailable under other detention provisions" including "an initial bond hearing before a neutral decisionmaker").

The government also asserts that "Petitioner's time in detention is principally due to his own litigation choices, including numerous continuances before the IJ, a briefing extension before the BIA, and seeking successive appeals of the agency's decisions." MTD/Return at 24. The extensions Martinez Leiva sought were not excessive or inappropriate. See McKee Decl. ¶¶ 8–25. And "[t]he duration and frequency of these requests do not diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing." Hernandez Gomez, 2023 WL 2802230, at *4 (citing Masood v. Barr, No. 19-cv-7623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020)).

## 2. Risk of Erroneous Deprivation

While it is not for the Court to decide the ultimate question of whether Martinez Leiva should be granted bond, he has offered persuasive evidence—of his rehabilitation, education, family ties, growing maturity, life goals, and the potential for a favorable outcome before the Ninth Circuit, which he is doggedly pursuing—that he does not pose a danger or present a flight risk. But he has received no process at all on the question of his dangerousness or risk of flight. Given this context, the risk of erroneous deprivation is

United States District Court
Northern District of California

high.  See Pham, 2023 WL 2744397, at *6.  The government's assertion that "There is no risk of erroneous deprivation—i.e., no 'value of providing [Petitioner] with a hearing,'" see MTD/Return at 25 (quoting Perera, 2021 WL 2400981, at *4), is wrong.[10]  Demore, which did not reach the constitutional question at issue here, does not hold otherwise.

### 3.    Government Interest

Finally, the government's interest in continued detention absent a bond hearing is low.  See Hernandez Gomez, 2023 WL 2802230, at *4.  While the government certainly has an interest in the "efficient administration of immigration laws" and the administrative burdens inherent in additional procedural protections, Landon v. Plasencia, 459 U.S. 21, 34 (1982),[11] "the governmental issue at stake in this [petition] is the ability to detain Petitioner without providing him with [a] bond hearing, not whether the government may continue to detain him" at all, Lopez Reyes v. Bonnar, 362 F. Supp. 3d 765, 777 (N.D. Cal. 2019).  "Requiring the government to provide [Martinez Leiva] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk."  See Perera, 2021 WL 2400981, at *5.

Balancing the Mathews factors, Martinez Leiva has demonstrated that his continued detention absent a bond hearing violates his right to procedural due process.  "A hearing would serve a valuable purpose in combatting any erroneous deprivation of [Martinez Leiva's] constitutional rights."  See id.  Indeed, numerous courts in this district have held that continued detention without a bond hearing for detainees held under the same statute for less time than Martinez Leiva violates due process.  See, e.g., Jimenez v. Wolf, No. 19-cv-7996-NC, 2020 WL 510347, at *1, *2, *4 (N.D. Cal. Jan. 30, 2020) (just over one year); Hernandez Gomez, 2023 WL 2802230, at *4 (sixteen months); Gonzalez, 2019 WL

---

[10] As the Court explained in Pham, "[t]he government's argument that there is no risk of erroneous deprivation because Pham is subject to mandatory detention without bond under § 1226(c), see Opp'n at 21, is circular. . . .  successful due process challenges to mandatory detention would require additional process—i.e., more than none—such as a bond hearing where the government must show that continued detention is justified."  Pham, 2023 WL 2744397, at *6 n.9.
[11] See also Rodriguez Diaz, 53 F.4th at 1208 (holding in section 1226(a) case that "protecting the public from dangerous criminal aliens" and ensuring that such individuals can "be successfully removed" are "interests of the highest order that only increase with the passage of time").

330906, at *3–5 (just over a year) (noting that "as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing") (internal quotation marks omitted).

### D.  Remedy

The Court further concludes that the appropriate remedy here is a bond hearing,[12] and that an IJ, not the Court, should conduct it, see Rodriguez v. Robbins, 804 F.3d 1060, 1084 (9th Cir. 2015), rev'd, Jennings, 138 S. Ct. 830; Mansoor v. Figueroa, No. 17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP."). As numerous other courts in this district have held, the government shall bear the burden, at that hearing, of proving by clear and convincing evidence that further detention is warranted. See Hernandez Gomez, 2023 WL 2802230, at *4 (collecting cases). The Court therefore rejects the government's argument that Singh, 638 F.3d at 1203, is no longer good law on this point. See Pham, 2023 WL 2744397, at *7 ("Absent controlling authority to the contrary, the reasoning of Singh and its holding remains applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at stake.'").

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the petition, DENIES the motion to dismiss, and ORDERS that an IJ conduct a bond hearing within ten days of this order.

**IT IS SO ORDERED.**

Dated: May 26, 2023

CHARLES R. BREYER
United States District Judge

---

[12] See Lopez v. Garland, No. 22-cv-0531-SAB-HC, 2022 WL 4586413, at *9 (E.D. Cal. Sept. 29, 2022) ("The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release.").